Mr. Justice STRONG!
delivered the opinion of the court.
The Circuit Court was of opinion that the information was insufficient; that it did not aver distinctly and separately what John Slidell had done; that it, in fact, made no charge at all against him, and, therefore, that it was substantially defective. lu this opinion we cannot concur. As was said in Miller v. The United States,‡ the proceedings directed by the fifth, sixth, and seventh sections of the Confiscation Act are proceedings in rem, and they are required to conform, as nearly as may be, to proceedings in admiralty or revenue cases. They are in no sense criminal proceedings, and they are not governed by the rules that prevail in respect to indictments or criminal informations. It may be conceded^that an indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient. It would be so for two reasons. It would not give the accused definite notice of the offence charged, and thus enable him to defend himself, and neither a conviction nor an acquittal could be pleaded in bar to a subsequent prosecution for one of the several offences. But in proceedings against real or personal property' to obtain a decree of cou *105 demnation and forfeiture under the Confiscation Act, liability of the.property seized to confiscation is alone the subject of inquiry. No judgment is possible against any person. The enactment of Congress was that property belonging to any one embraced within several classes of persons should be subject to seizure and condemnation. Persons were referred to only to identify the property. No.t all enemies’ property was made confiscable; only such as was designated by the act, and reference to'the ownership was the mode selected for designating that which was made liable to confiscation. If the property belonged to a person who had filled either of the offices specified, or who had .done any of the acts mentioned in the fifth, sixth, or seventh articles of the information, it was the property ¡which the act had in view. The United States had, therefore, only to aver and prove that the lots and squares seized belonged to some One who was one or another of the persons referred to in the fifth or sixth sections of the act of (pougr'ess.. In either alternative the property was made subject to Confiscation. It may be the information might have been more artificially drawn, and that if the owner had appeared in answer to the citation he might have interposed succteSsfully a special demurrer. But after default was made and entered, and after a final]udgmeut of condemnation,^faults in the mode of pleading, mere formal faults, can be ¿f no importance. They cannot have injured any one. ’If the information set forth, though informally, a. substantial right of action, it was'sufficient, and the judgment cannot be disturbed because of such faults. And that it did in'this particular cannot, be questioned, .for if the ownership of the property w;as in a person embraced in either class mentioned in the fifth and .sixth sections, of the act (no matter which class), it' was liable to confiscation. This the information averred. It pursued the wor.ds of the law, and that in an admiralty or a revenue ease is all that is required. In the case of The Emily and the Caroline,* which was a case where *106 the libel described the offence in the alternative, pursuing the words of the law, alleging that the vessel was fitted out “within a port of the United States, or caused to be sailed from a port within the United States, for the purpose of carrying on trade or traffic in slaves, the same objection was raised vvhich has been raised in this case, namely, that the charge was-in the alternative. But it was overruled. The court admitted .that fitting out and causing to sail were distinct offences, but denied that charging them in the alternative was exceptionable. It was said that in “ admiralty proceed-i.iigs a libel, in the nature of an information does not require' all the formality and technical precision of an indictment at common law. If the allegations aye such as plainly and distinctly to mark the offence, it is all that is necessary: And where it is fouuded upon a.statute, it is sufficient if it pursues the words of the law.” Beferen.ee was then made with approbation to a note of Judge Story, in the beginning of 7th Crunch, to the case of The Caroline,* in which it was said the court did not mean to decide that stating the charge in the alternative would not have been sufficient if each alternative had constituted an offence for which the vessel would have been forfeited. The court then added these observations: ‘‘It is said this mode'of alleging two separate and distinct offences leaves it wholly uncertain to vvhich of the accusations the defence is to be directed. This objection, if entitled to consideration, would apply equally to an information- laying each offence in a separate count,” and they concluded that the objection, if available at all, must go to the full length of limiting every information to a single offence, wbic.h they thought was not required by any p'rinciple of justice or sanctioned by any rule of practice applicable to admiral tj'proceedings. The same doctrine was asserted by Chief Justice Marshall in Jacob v. The United States.† So in Parsons on Shipping and Admiralty,‡ the author in view of the authorities, gives his opinion that a libellant may, state his case in the- alternative. So in Cross *107 v. The United States,* Judge Story remarked that “in proceedings in admiralty the same strictness ,is not required as in proceedings in common-law courts. And where the seizure is on land,” said he, “although the proceedings would seem to be analogous to informations in the Exchequer, yet I do not know that in our courts the rigid principles of the common law applicable to such informations have been solemnly recognized.” These considerations, in our opinion, justify us in ruling that the Circuit Court erred in deciding that the information is fatally defective because it does not aver distinct^' and separately what John Slidell had done, but makes its allegations in the alternative.
No other reason than this we have mentioned, and which we regard as insufficient, was assigned by the Circuit Court for reversing the decree of confiscation, and ordering the information to be dismissed. But during the argument in this court, other objections have been urged against the decree, which, if they are valid, would justify its reversal, though some of them would not warrant the dismissal of the libel. It, therefore, becomes necessary to examine and determine whether they exhibit- error in the action of the District Court. .
The first of these objections, and the one most pressed, is, that the court was without jurisdiction of the case. It is said no other property than such as had, prior to the filing of the information, been seized by the direction of the President of the United States, was within the- purview of the seventh section of the Confiscation Act, and, therefore, within the limited jurisdiction of the'District Court; and it is insisted the record does not show there had been any executive seizure of the eight hundred and forty-four lots and ten squares of ground before the information was filed, or, indeed, at any time. .
Undoubtedly, though not an inferior court, -the District Court is one of limited jurisdiction, and that it has jurisdic *108 tion of the particular case which it attempts to adjudicate, must always appeal’. Undoubtedly, also, only such property as' has been seized by executive order is within the power of that court for Confiscation proceedings. Thus much is ■conceded. But it is a mistaken assertion that the record in this case.does not show an executive seizure-of the property condemned- before the District Court assumed any jurisdiction over it. The information avers'tluit such a seizure.was made on the 15th of August, 1863, by the marshal, under written authority given 'him by the district attorney, in compliaiice with instructions issued to him by-the Attorney-' General of ithe United States,"by virtue of the act of Congress-of J.hly 17th, 1862 (the Confiscation Act); and to a citation or monition founded on the informatign, default was made. What the effect of this default was we do not propose how- to discuss at length. We have gone over the ground recently in the case of Miller v. The United States,* and to that' case we refer. In view of -what was' there said and decided, and in view of the authorities cited, it must be held that tlié default established the truth of ¿11 the material averments in the information, and among, others, that there had been an executive seizure before the information was filed. ' It was equivalent in effect to a confession! Now, w.hile it is true a party cannot, by consent, confer jurisdiction where none would exist without it, it is equally true that when jurisdiction depends upon the existence of a fact, its existence may be shown as well by .the confession of a party as by any other evidence.
It is next contended that the court had ire jurisdiction, even if the seizure alleged in the information was made, because it is not-averred to have been made by order of the President of the United States. As we have seen, the libel sgts forth a seizure made by the marshal, under authority given by the district attorney, in pursuance of instructions issued by the Attorney-General of the United States, by virtue of the act of Congress, (viz., the Confiscation Act). It is said *109 this exhibits no authority given by the President for the seizure, and that the Attorney-General was not empowered to direct it. But if the seizure was made by virtue of the act of Congress, as the information avers it was, it was necessarily caused to be made-by the President, for he only was empowered by the act to cause it. Then, the Attorney-General must have been the agent of the President to give instructions to the district attorney, aud'through him to the marshal. The language of the statute is, “it shall be the duty of the President to cause the seizure,” &c. This implies that the seizure is to be made by‘the agents of the President. 'And a direction given by the Attorney-General to seize property liable to confiscation under the act of Congress must be regarded as a direction given by the.President. In’ Wilcox v. Jackson* it was ruled that the'President speaks and acts through the heads of the several depart meats in relation to subjects which appertain to their respective duties.- Therefore, where, by an act of Congress, all lands reserved from sale by order of the President Avere exempted from pre-emption, this court ruled that a request for a reservation' made by the Secretary of War for the use of the Indian-department, must be considered as made by the President Vvithin the meaning of the act. The same doctrine was asserted in United States v. Eliason.† It may, we think, be properly applied to the present cáse. While it is true the right of seizure and confiscation grows out of a state of war, the means by which confiscation- is effected have a very appropriate relation to the duties of the law department of the government. But whether this is so or not, it is sufficient, that the information iu this ease avers the seizure was made by virtue of the act of Congress. .'It must, therefore, have been caused by the President.
It is next objected that the suit was on the admiralty, and not on the law .side of the District Court. The seventh section of the' Confiscation Act enacts that the proceedings shall conform as nearly as may be to the proceedings in ad *110 miralty or revenue cases. Strict conformity is not required.. No dopbt in cases of seizure upon land, resort should be had to file common-law side of the court, and such, in substance, was, we think, the case here. Everything necessary to, a common-law proceeding in rem is found in the record. An information was filed (called a libel of information, it is true, but still an information), a citation as well as a monition was issued, a default was taken, and, after consideration of the evidence, condemnation was adjudged. Wbat was lacking in this to a' common-law proceeding in rem? The principal lack alleged is that there was nq jury trial-. But in courts ojf common law no jury is called when there is no issue of fact to be tried. An inquest is sometimes employed tó assess damages; but a jury .to find facts is never required where there is no traverse of those alleged, and where a defendant has defaulted. What matters it then that ,the information was called a libel of information, or that the warrant and citation is called a monition ? The substance and all the requisites of a.common-law proceeding áre foqnd in the record. Technical niceties aré not required either in admiralty or revenue cases.*
;-It is. next objected there was no sufficient service .of the process;,.but we think the return,of the marshal shows exact compliance with the order of the.court directing service, and the manner in which it should be made. The order was -that notice be given in two ways to the owner or owners of the property, and all persons interested therein, requiring them to appear and answer the information. The first of th'ese ways was by posting a copy of the order on the front door .of the court-house, and the second was by publication, viz.,-publication of the requirement to appear in the JEra newspaper. In the execution of the order the marshal went beyond it..-"He posted copies of the .information, of the warrant, and of the order of the judge, and he published the monition, which was a citation, as he was directed. ’ The service was; therefore, sufficiently made.
*111 It is further objected that the information was informal, in that it contained no charge- against Slidell, the alleged owner, but that its averments were in the disjunctive. We have already sufficiently answered this. So, too, the absence of any averment that the causes of forfeiture were contrary to the form of the statute or statutes of the United. States in such ease provided, is no sufficient reason for reversing the judgment of the District Court. .Such an averment is required'by the twenty-second admiralty rule, but even in admiralty a failure to make it cannot be taken advantage of in a court of errors.* The defect is only formal. It is true the absence of such averment in indictments and criminal info.mations has been held to be a fatal fault, but for reas.ons inapplicable to civil proceedings, and we need not repeat that the present is a civil ease.
Another objection urged against the .proceedings in-the District Court is, that the warrant, citation, and monition was not signed by . the clerk of the court. It uvas attested by the judge, sealed with the seal of the court, and signed by the deputy clerk. This was sufficient. An act of Congress authorized the employment of the deputy, and.in gen*, eral, a deputy of a ministerial officer can do every act which h.is principal might do.†
A further objection urged against the adjudication of forfeiture made by the District Court is, that it was made without any finding that the property belonged to John Slidell, or any person included in either of the classes designated in the fifth and sixth sections of the Confiscation Act. This is a renewal of the complaint so earnestly pressed in Miller v. The United States., and which we held to be without foundation. It is said that- notwithstanding the default, it was the duty of the court to “ proceed to hear and determine the case according to law, as is directed by the eighty-ninth section of the act of March 2d, 1799,‡ respecting forfeitures incurred under that act.” But were this conceded, of what avail would it be in this cáse in support of the objection? *112 The court did proceed to hear and determine the case after the default was .entered. And it was not until after such hearing and consideration that the property was condemned. This appears by. the record. Having bear'd and considered evidence, it must be presumed the court found that the property belonged to, a person engaged in the rebellion, or one who had given aid or comfort .thereto, as well as all other facts necessary to the rendition of the judgment. This is a presumption always made in-support of judgments of courts after their jurisdiction is .made to appear. No rule of law required the District Court to state in detail in its record its ffndiugs of fact, and no such practice has prevailed in. any court except some which are .both of limited and, inferior jurisdiction. Nor is it to be considered in a. court' of error 'whether the evidence was sufficient to warrant the findings presumed to have been made, and without which the judgment could not have been given. A less degree of evidence' is certainly needed after a default. Even in United States v. The Lion,* so much relied upon, where a condemnation was sought under an' act of Congress which enacted that after the default the court should proceed to hear and determine, the case according to law, Judge Sprague said, “.To what extent there must be a hearing must depend on the circumstances of the case.” “ The court,” said he, “ will at least examine the allegations of t.he libel, to see if they are sufficient in law, the return of the marshal, and such affidavit, of affidavits as the district attorney shall submit.” And he added that a wilful omission by the owners to answer might of itself satisfy the court that a forfeiture should be decreed. But without further consideration of-th'is objection, we refer to the opinion delivered in Miller v. United States, to. which we still adhere.
There remains but one other matter which requires notice. It is contended that the proclamations of amnesty in 1868 amounted in effect to a repeal'of the Confiscation Act. To this we cannot assent. No power was ever, -vested in the *113 President to repeal an act of Congress. Moreover,'the property condemned in this ease became vested in the United States in 1865, by the judgment of forfeiture, and the sale under the venditioni exponas merely converted into money that which was the property of the government before. No subsequent proclamation of amnesty could have the effect of divesting vested rights. Even the express repeal of a statute does uot take away rights of property which accrued-under it while it was in force.
We have thus-reviewed the whole record of the proceed.ings in the District Court,'and we have been able to discover nothing which justified a revérsal of the decree of condemnation.
Judgment of the Circuit.Court reversed, and the cause remanded with instructions to
Affirm the judgment of the District Court.

 11 Wallace, 2G8.

 9 Wheaton, 381.

 7 Cranch, 496.

 1 Brockenbrough, 520.

 Vol. 2, p. 383, edition of 1869.

 1 Gallison, 31.

 II Wallace, 268.

 13 Peters, 498.

 16 Id. 291.

 Samuel, 1 Wheaton, 9; The Hoppet, 7 Crunch, 489.

 The Merino, 9 Wheaton, 401.

 Gomyn’s Digest, Officer, D., 3,

 1 Stat. at Large, 696.

 1 Sprague, 399.