OPINION.
Scofield, J.,
delivered the opinion of the court:
In February, 1863, the claimant’s testator was the owner of several plantations in the State of Mississippi, on which were 120 bales of cotton, also owned by him. This cotton was seized and receipted for by the captain of the United States gunboat Tyler. The Tyler transferred it, at the mouth of the Tazoo Eiver, to the Black Hawk, the flag-ship of Admiral Porter. From the Black Hawk it was transferred to the United States *257 transport General Lyon, and taken to Cairo, Ill. The General Lyon delivered it with other cotton to Captain Pennock, by whom it was turned oyer to the United States marshal. One lot of 134 bales, supposed to contain claimant’s cotton, was libeled as set forth in finding IY, in the district court of the United States for the southern district of Illinois, at first under the Act of July 13, 1861, ch. 3 (12 Stat. L., 256), but finally, by amendment, as property belonging’“to a person nowin armed rebellion against the Government of the United States.” (Act of July 17,1862, ch. 195,12 Stat. L., 589.) By decree of the court, 23 bales were given up to John D. Jones, who was found to be the owner, and 111 bales were condemned and sold. One-half the proceeds of the sale, amounting to $9,870.35, was paid into the United States Treasury, and the other half to Captain Pennock, as informer. Captain Pennock turned over his half to Admiral Porter, who was in command of the Mississippi squadron. By Admiral Porter it was deli vered, with other like money, t& the district court of the District of Columbia, by whose adjudication it was finally covered into the United States Treasury, “ on account of money received for prize belonging to the Mississippi squadron, to go to the credit of the captors.” The sum thus covered into the Treasury being the proceeds of the Pennock moiety of the 111 bales, less costs and charges, amounted to $9,673.44. These 111 bales of cotton, as appears by finding Y, belonged to claimant. What became of the other 9 bales, said to have been seized by the Tyler, does not appear.
By the amended libel, the court proceedings were brought under the Confiscation Act of July 17, 1862 (12 Stat. L., 591).
The facts in this case (finding X excepted) are in all respects similar to the facts in the Winchester Case (14 C. Cls. B., 13). Judge Davis, delivering the opinion of the'court, stated, in two short paragraphs, the whole law of the case as follows:
Without a previous seizure under an executive order, for the purpose of confiscation, no proceedings could' he properly instituted under the confiscation Act of July 17, 1862 (The Confiscation Cases, 20 Wall., 108), and as a di stri ct court of the United States is a court of limited j urisdietion, although notan inferior court (Thompson v. Lyle, 3 Watts & Serg., 166), and as it must always appear in the record that it has jurisdiction of the particular case which it attempts to adjudicate (Ex parte Smith, 94 U. S. R., 456), the record in any proceeding for confiscation must show an executive seizure of the property condemned before the court assumed jurisdiction over it. (The Confiscation Cases, sup.') And if the facts necessary to give the court *258 .'jurisdiction do not appear in tlie record, its jurisdiction may be inquired into in every other court -where the proceedings are relied upon and brought before the latter by a party claiming the benefit of them. (Williamson v. Berry, 8 Pet., 540. Cited with approval in Thompson v. Whitman, 18 Wall., 467.)
In the present case no such executive order preceded the confiscation proceedings. The claimant’s cotton was seized by the naval forces of the United States, under the general executive order of August 28, 1862, for the purpose of naval defense. The «admiral in command reported the seizure ■as required by the order, and was instructed by the Secretary of the Navy, ■ on the 28th of March, to hold the cotton under the abandoned and cap•tured property act. This executive order struck at the root of the proceedings in Illinois; and when the district attorney libeled the cotton he did snot, because he could not, aver that it had been seized by executive order for the purpose of confiscation. The condemnation and sale under such a record are void, and for such portion of the claimant’s cotton as passed into ■the Treasury he is entitled to a judgment in this action, notwithstanding the judgment in Illinois.
Upon the question whether the claimant in- that case was '-entitled to recover the moiety which found its way into and •out of the Treasury, through the decree of the district court of v-the District of Columbia, this court was divided. From, the - decision of the majority affirming such right two judges filed ••dissenting opinions. The case was appealed to the Supreme AOourt and affirmed. (Winchester v. United States, 99 U. S. R.., 372.)
These decisions settle all questions of law in the case at bar, ■■ except the one depending on the new fact set out in finding X. That finding contains the order of the President directing .the Attorney-General to superintend all proceedings under the ..Act of July 17, 1862, and the instructions of the Attorney-'-General to his subordinate officers.
Does this order of the President and the pursuant instruc-Vtioas of the Attorney-General supply the executive order of - seizure, the absence of which in the Winchester Case, as decided in that case, deprived the United States district court of Illinois of jurisdiction ?
By these instructions of the Attorney-General (which must be regarded as coming from the President) the marshal is directed to make seizures “under written authority to be given [.by the district attorney, specifying with reasonable certainty rihe property to be seized and the owner whose right is sought •to be confiscated.” Had it been averred in the libel that the *259 ¡seizure was thus made the case would hare been brought within the rule laid do wn in the Confiscation Cases (20 Wall., 109), but the record contains no such averment. The cotton is therein stated to have been seized “ by the United States gunboats of the Mississippi squadron,” and it appears by finding IX that this squadron was directed by the Secretary of the Navy, presumed also to be acting by order., of the President, to make ■quite another disposition of naval seizures.
Chief Justice Waite, in giving the opinion of the court in Ex parte Smith (94 U. S. R., 455), says:
The facts upon which the jurisdiction of the courts of the United States Tests must, in some form, appear in the record of all suits prosecuted before ¡them. To this rule there are no exceptions.
As there is nothing in the record of the Illinois court to indicate that the seizure was made by executive authority, through the instructions of the Attorney-General or otherwise, and nothing in the findings upon which, such allegation could have been truthfully based, this suit must be governed by the rulings in the Winchester Case.
The decision of the court is that the claimant recover from the defendants the sum of $>19,543.79.