**UNITED STATES of America**

v.

**John Paul MALINOWSKI.**

**Crim. A. No. 70–717.**

United States District Court,
E. D. Pennsylvania.

March 27, 1972.

Malcolm Lazin, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John D. Egnal, Philadelphia, Pa., for defendant.

## OPINION

HUYETT, District Judge.

On July 10, 1970, defendant, John Paul Malinowski, an instructor in theology at St. Joseph's College, Philadelphia, Pennsylvania, filed with his employer an employee withholding exemption certificate, Form W-4, in which he claimed 15 exemptions. Defendant's previous Form W-4 filed April 2, 1970, claimed only 2 exemptions. At the time defendant claimed 15 exemptions he addressed a letter to the business office of St. Joseph's College stating, in part, that "I have entered into a relationship of economic and social dependency with a group of 15 persons. One of our aims is to exercise greater control over the use of our taxes, especially that large portion that is used for war making." [1] A pretrial stipulation approved by defendant stated that defendant at the time of his submission of Form W-4 dated July 10, 1970, to his employer knew that the exemptions he claimed were not permitted as exemptions under Internal Revenue Code of 1954, § 152, and that as an individual he was required to supply information to his employer under Internal Revenue Code of 1954, § 3402. [2]

1. The letter, which was Government exhibit No. 4, reads as follows:
"Please note the sharp increase in exemptions on my W-4 tax form. I have entered into a relationship of economic and social dependency with a group of 15 persons. One of our aims is to exercise greater control over the use of our taxes, especially that large portion that is used for war-making. I will notify the Internal Revenue Service of this change in my status. . . . P.S. As I understand the IRS regulations, an employer is not responsible for

the legality or accuracy of a claim, nor is he authorized to alter a claim."

2. Paragraph III of the pretrial stipulation and order, Government exhibit No. 1, contains the following: "The parties have agreed to the following Stipulations to be entered at the trial and to be used as evidence by the finder of fact.
(a) That with the exception of John Paul Malinowski and his wife, the remaining thirteen of the fifteen exemptions claimed by John Paul Malinowski on his Employee Withholding Exemption

Defendant was a member of the Philadelphia War Tax Resistance League. His claim for 15 exemptions was a form of protest against the use of tax revenues for the support of the war in Vietnam. His defense was founded essentially upon the reasonableness of his beliefs that he was required to alter his Form W–4 to prevent any part of his income from being used for the war in Vietnam.[3]

Defendant was indicted on December 16, 1970 for violation of Internal Revenue Code of 1954, § 7205.[4] The indictment charged that defendant, who was required to supply the number of exemptions on the employee withholding exemption certificate, Form W–4, "did wilfully supply false and fraudulent information". He was tried and convicted by a jury in June 1971. The defendant has filed motions for acquittal or a new trial.

### (I) *Motion for Judgment of Acquittal*

Defendant asserts that there should be a judgment of acquittal because there was insufficient evidence to sustain the jury's verdict. He specifically urges that the government has failed to prove the elements of fraudulence, wilfulness and falseness as required by the statute and the indictment.

■■ On motion for judgment of acquittal, the test is whether the evidence is such that reasonable minds could find guilt beyond a reasonable doubt. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944); United States v. Allard, 240 F.2d 840 (3 Cir. 1957), cert. denied, *sub nom.* Fishman v. United States, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 (1957). In considering the motion the evidence must be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Feldman, 425 F.2d 688 (3 Cir. 1970).

### (A) *Fraud*

The indictment charges that defendant supplied "false *and* fraudulent information." (Emphasis added.) It is uncontradicted that the government did not produce evidence to prove that defendant submitted fraudulent information. The issue is whether fraud was an element of the crime charged in the indictment which must be proved.

■■ The applicable statute, Internal Revenue Code of 1954, § 7205, is vio-

Certificate, Form W–4, dated July 10, 1970, were not permitted exemptions as found in Internal Revenue Code of 1954, Section 152.

(b) That John Paul Malinowski knew at the time of his submission of the Employee Withholding Exemption Certificate, Form W–4, dated July 10, 1970, that said thirteen of the fifteen exemptions that he claimed were not permitted as exemptions by Internal Revenue Code of 1954, Section 152.

(c) That John Paul Malinowski was an individual in July 1970, who was required to supply information to his employer, St. Joseph's College, under Section 3402.

3. Defendant, in a pretrial memorandum setting forth the theory of his defense, listed his beliefs which prompted him to request fifteen exemptions on Form W–4:

"1. The conduct of the United States, at a governmental level, is in violation of recognized laws of war, and as such, is criminal.

2. A person who contributes financial support to an enterprise, knowing of its criminal intentions, is guilty of the crimes committed.

3. Since my income was subject to withholding, I could prevent my participation in the criminal venture only by altering the W–4 form."

4. Internal Revenue Code of 1954, § 7205 (1967) provides in relevant part:
"Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law . . ., upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both."

lated when one wilfully supplies "false or fraudulent information". The general rule is that where a statute provides that an offense may be committed in several ways in the alternative, an indictment should use the conjunctive term "and" to enumerate the means rather than the disjunctive term "or". Smith v. United States, 234 F.2d 385, 389 (5 Cir. 1956); United States v. Wells, 180 F.Supp. 707 (D.Del.1959); cf. United States v. Price, 444 F.2d 248 (10 Cir. 1971). Guilt under such indictment may then be established by proof of any one of the means. United States v. Wells, supra. The rationale for this rule is that an indictment in the disjunctive does not provide sufficient certainty. The Confiscation Cases, 20 Wall. 92, 87 U.S. 92, 104, 22 L.Ed. 320 (1873); United States v. MacKenzie, 170 F.Supp. 797 (D.Me.1959).

 The defendant contends that although this is the usual rule, the instant case presents a distinguishable situation since the means involved, falsity and fraudulence, are of significantly different magnitudes. This is a novel argument for which no authority is cited and which does not go to the basis for the rule. The indictment framed in the conjunctive was proper and it was not necessary for the government to prove fraud if it sufficiently demonstrated falseness.

(B) *Falseness*

Defendant claims that the government failed to produce sufficient evidence to permit the jury to conclude that he had supplied false information on the form. He argues that the information on the W–4 form must be taken in context with the other knowledge acquired or possessed by officials at St. Joseph's and the Internal Revenue Service. He contends that neither Mr. Harrison, the Comptroller at St. Joseph's, nor Internal Revenue Service Agent McLaughlin believed that he was entitled to fifteen exemptions, or even understood it to be actually a claim that he was so entitled.

 The employee withholding certificate, Form W–4, is a basic instrument of the tax withholding system. 8A Mertens Law of Fed. Income Taxation § 47A.02 (1971). The certificate is authorized in Internal Revenue Code of 1954, § 3402(f)(2). The purpose of the Form W–4 is to inform the employer of the number of exemptions to which the employee is entitled so that the employer may withhold the amount required by law. Every employer who pays wages is required to withhold from the wages a tax. The amount withheld is determined by the use of a formula or tables which involve the "number of withholding exemptions claimed." Internal Revenue Code of 1954, § 3402(a) and (c). This phrase means the number claimed in a withholding exemption certificate, or a Form W–4. Internal Revenue Code of 1954, § 3401(e). The effectiveness of this system as a tax collection device obviously depends upon the honesty of the withholding exemptions claims submitted by the employees. The employer is not authorized to alter the form or to dishonor the employee's claim. The certificate goes into effect automatically in accordance with certain standards enumerated in § 3402(f)(3).

 The purpose of § 7205 is to protect the integrity of the tax withholding system. It forbids the wilful filing of false information by one required to file information under § 3402. The information required from an employee is that information which appears on the Form W–4. Any other knowledge or suspicions of employers or government officials are irrelevant to the purpose because it is only the information on the certificate which effects tax withholding. If the withholding system is to work and the Internal Revenue Code is not to be reduced to a shambles, the certificates must represent the truth and, therefore, the "false information" in the statute refers only to that which the employee submits on the Form W–4.

 Since that is the limit of relevant inquiry, it is clear that the proof

was sufficient to establish guilt. The stipulation entered into by the defendant admitted that he was not eligible under Internal Revenue standards for fifteen exemptions. The information supplied to the employer, therefore, was obviously false.

### (C) *Wilfulness*

The submission of false information must be wilful to violate § 7205. Defendant asserts that the government did not demonstrate that he acted wilfully. The basis for his motion is his contention that under the statute proof of wilfulness requires a showing of evil motive or bad faith.[5]

▮▮▮▮▮ The proper standard for wilfulness in this case is that the act is done voluntarily and intentionally, and with the specific intent to do that which the law forbids. In United States v. Cirillo, 251 F.2d 638 (3 Cir. 1957), cert. denied 356 U.S. 949, 78 S.Ct. 914, 2 L. Ed.2d 843 (1958), the Third Circuit held that the necessary wilfulness was present in a tax case under a related section, § 7203, when the act was attended by knowledge of the legal obligation and the purpose to prevent the government from getting that which it legally requires. *Accord,* United States v. Litman, 246 F.2d 206 (3 Cir. 1957), cert. denied, 355 U.S. 869, 78 S.Ct. 118, 2 L. Ed.2d 75 (1957); United States v. Martell, 199 F.2d 670 (3 Cir. 1952), cert. denied 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350 (1953); *see also,* United States v. Moylan, 417 F.2d 1002 (4 Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970). Defendant stipulated that he knew at the time he filed the form that he was not eligible to take fifteen exemptions under § 152. A jury could reasonably find that his purpose in doing this was to interfere with the withholding system and to prevent the collection of his taxes in the manner

prescribed by law. In the letter which he attached to his W–4 form defendant demonstrated his knowledge that the employer must act in accordance with the information on the submitted form. The defendant, therefore, could properly be found by the jury to have possessed the necessary knowledge of his legal obligations and the specific intent to thwart the proper withholding of his taxes.

### (D) *Selective Prosecution*

Defendant also renews a pretrial motion for dismissal on the basis of selective prosecution. He claims that the government brought the present case because of his opposition to the Vietnam war and that the statute is being enforced in a discriminatory manner to harass dissenters. A hearing was held on June 10, 1971 and defendant's motion was denied.

▮▮▮▮▮ Selective prosecution was first recognized as violative of the Fourteenth Amendment in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1896). This prohibition has since been extended to Federal prosecutions through the Fifth Amendment. Dixon v. Dist. of Columbia, 129 U.S. App.D.C. 341, 394 F.2d 966 (1968). In *Yick Wo* the Court was concerned with "unjust and illegal discriminations between persons in similar circumstances." 118 U.S. at 374, 6 S.Ct. at 1073. It is not all selective enforcement that is forbidden, but that which is based on some unjustifiable standard such as race, religion or other arbitrary classification. Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L.Ed.2d 446 (1962). The prosecutor has broad discretion which is abused only in the actual existence of an invidious discrimination. "It will not do simply to show . . . that enforcement of the law is lax, or even that other offenders may go free." Washington v. United States, 130 U.S.App.D.C. 374,

---

5. While this section concerns the defendants' motion for acquittal, much of the discussion will be relevant to his motion for a new trial since the propriety for the denial of many proposed voir dire questions and jury instructions depend upon the court's interpretation of wilfulness.

401 F.2d 915 (1968). One must show an intentional or purposeful discrimination. Moss v. Hornig, 314 F.2d 89 (2 Cir. 1963).

■ The evidence adduced at the hearing does not support a conclusion that defendant was selectively prosecuted. While courts must be aware of the dangers of governmental harassment of groups which hold unpopular positions, the defendant has not shown that the decision to prosecute was influenced by his political persuasion. Defendant failed to prove that this was an intentional or purposeful discrimination based on invidious standards.

The government at the hearing supplied a list of 59 cases successfully prosecuted under Section 7205. Only one of these involved a war tax protestor. Francis T. McLaughlin, special agent of the Internal Revenue Service, assigned to investigate the instant case, testified that the instant case had come to the attention of the Internal Revenue Service via a letter to the Internal Revenue Service from the Comptroller of St. Joseph's College; that prior to interviewing defendant, the agent was unaware that the defendant was a member of the War Tax Resistance League; that he was unaware of any internal documents of the Internal Revenue Service relating to War Tax Resistance Groups; and that the recommendation to prosecute was his own. Thomas F. Martin, Chief of the Intelligence Division for the Eastern half of the Pennsylvania District, testified that headquarters of the Internal Revenue Service keeps a systematized record of violations of a particular section of the Internal Revenue Code only after the case is successfully prosecuted; that he received no instructions from the Internal Revenue Service to crack down on persons protesting the war by non-payment of taxes; that there had been no surveillance of war tax protestors under his direction; that of the two cases referred to the U.S. Attorney's office of this District that one involved the defendant and the other was a person who wished to save money; and that in respect to an obviously false Form W-4 he had no authority to compromise by referring the case for civil settlement, but that such a case could be disposed of only by a recommendation of criminal prosecution. Malcolm Lazin, Assistant United States Attorney, who made the prosecutive decision stated that he was unaware of any instructions from the Justice Department as to war tax protestors.

The government represented without dispute that prior to the receipt by the Internal Revenue Service of the letter from the Comptroller of St. Joseph's College that the Intelligence Division had no file on defendant or any information in respect to the defendant from any Federal or state agency.

Counsel for defendant contends that the government failed to produce all of the information directed by the Court to be produced at the pretrial hearing. Considering the shortness of the notice to the government, it is clear that the government produced at the pretrial hearing all pertinent information which could be produced at that time.[6]

(II) *Motion for New Trial*

(A) *Voir Dire*

Defendant objects to the conduct of the voir dire in two respects: the failure to question the prospective jurors individually and out of the hearing of the other jurors; and the judge's refusal to ask meaningful questions requested by defendant.

■ In the present case there was no need to conduct an individual voir

6. It should be noted that defendant was arraigned on April 7, 1971 and was allowed a most ample period of 30 days to file motions. On May 18, 1971 defendant for the first time filed 2 motions, one of which sought dismissal of the indictment because of selective prosecution. On May 4, 1971 a trial date of June 1, 1971 was set and thus defendant filed his motions 14 days thereafter.

dire outside of the hearing of the other prospective jurors. There was little likelihood, in view of the questions asked, that the questioning of one prospective juror would taint the impartiality of others. The only point on which this was arguably necessary was concerning the exposure of the jurors to pretrial publicity. In United States v. Addonizio, 451 F.2d 49 (3 Cir. 1972), cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), the Third Circuit upheld a district court which had conducted a voir dire concerning pretrial publicity in the presence of all prospective jurors. In that case the publicity was much greater and of a far more prejudicial nature than in the present case. While the Court in *Addonizio* went on to direct district courts to abide by American Bar Association's Standards Relating to Fair Trial and Free Press, § 3.4(a) (Approved Draft, March 1968), the ruling was prospective and the instant trial occurred prior to the decision.

Defendant claims that the court erred in refusing to ask certain requested questions during voir dire. The trial judge has very broad discretion in the conduct of voir dire subject only to "the essential demands of fairness." Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931).

Defendant's requested voir dire questions were not appropriate for the case and would have involved the court in a very lengthy procedure which was not likely to elicit much helpful information. Many of the proposed inquiries concerned the prospective jurors' views on the Indo-China conflict and on civil disobedience. Other questions concerned the religious preferences, group memberships and regular reading material of the prospective jurors. While in certain cases these questions may be valuable to probe harmful prejudice, in view of the specific and limited nature of the issues of knowledge and purpose in this case they were not relevant. The court did inquire about any prejudice which would

exist because of defendant's motives (N.T. 116), but without any response to this inquiry it was not necessary to become entangled in the complex questions proposed by defendant. *See* United States v. Dennis, 183 F.2d 201, 227–228 (2 Cir. 1950) (Hand, J.), aff'd on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

(B) *Presence of the Defendant*

Defendant's next claim is that the court committed prejudicial error in excluding him from a pretrial conference and a side-bar conference during the trial. He bases this contention on Fed.R.Crim.P. 43 which provides that "[t]he defendant shall be present . . . at every stage of the trial. . . ."

The "pretrial conference" from which defendant was excluded was merely a meeting of counsel in Chambers two days prior to the June 10, 1971 hearing on the issue of selective prosecution and concerned only procedures to be followed during the hearing and did not involve any factual or legal issues. The side-bar conference was on the second day of the trial and pertained to measures to keep the jury away from the public.

It was clearly not error to exclude the defendant from these two conferences. The subject matter of both was collateral to the proceedings and could not be considered a stage of trial within the rule. United States v. Gradsky, 434 F.2d 880 (5 Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828 (1971); United States v. Lewis, 420 F.2d 686 (5 Cir. 1970); 8A Moore's Fed. Practice § 43.02 [2] (1969); *cf.* United States v. Lynch, 132 F.2d 111 (3 Cir. 1942), cert. denied, 318 U.S. 777, 63 S.Ct. 831, 87 L.Ed. 1146 (1943). Neither defendant nor his counsel has indicated how the defendant's absence was prejudicial, and the court cannot conceive of any prejudice which flowed from the exclusions.

**356**

### (C) Inadequate Discovery on Issue of Selective Prosecution

Defendant seeks either a new trial or a further hearing on his motion for dismissal on grounds of selective prosecution because of inadequate discovery. He claims the government should have been required to produce evidence as to the number of investigations undertaken under § 7205, the number of cases not referred by IRS to the Department of Justice and the number of cases not prosecuted by the Department of Justice.

 The request by defendant would appear to require a massive effort on the part of the government. Mr. Martin indicated that it would require him to go through every file in his office to search out the desired information. (Pretrial Conference, June 10, 1971, N.T. 72–75.) Mr. Lazin indicated that the Internal Revenue Service in Washington informed him that aside from the number of successful prosecutions, which was obtainable through the computer, the other information would require a mammoth clerical effort. In light of the breadth of defendant's request and his failure to present any evidence to support his contention of selective prosecution, his request for discovery is not reasonable as required by Fed.R.Crim.P. 16(b).

### (D) Character Witnesses

 The court permitted the defendant to present the testimony of three character witnesses, but would not allow him to call thirty other witnesses who would testify as to his reputation. It is well recognized that a trial judge has discretion to limit the number of such witnesses, and this discretion will be disturbed only on a clear showing of prejudicial abuse. Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Defendant used his three best witnesses and it was clearly not an abuse to deny him the opportunity to call thirty other persons whose testimony would merely have been cumulative.

 In his request for charge, defendant asked that the jury be charged that evidence of good character may of itself create a reasonable doubt, and that it is substantial and positive evidence. The court charged the jury to consider all of the evidence, but it made no special reference to character testimony. While the general rule is that a court should charge in a manner similar to that requested by defendant it is not an absolute requirement. In the present case where the issues were very narrow and the defendant made the stipulation which he did, it would appear that the evidence is irrelevant to the defendant's innocence. United States v. Garland, 364 F.2d 487 (2 Cir. 1966), cert. denied, 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440 (1966); Springer v. United States, 148 F.2d 411 (9 Cir. 1945). Even if it were error not to charge on the evidence, it would appear to be harmless error in view of the overwhelming evidence of guilt. United States v. Cramer, 447 F.2d 210 (2 Cir. 1971), cert. denied 404 U.S. 1024, 92 S.Ct. 680, 30 L.Ed.2d 674 (1972).

### (E) Charge to the Jury

Defendant's final contention is that the court erred in the instructions which were given to the jury and in the exclusion of certain testimony. The objections are based upon his view of the issues of fraud, falseness and wilfulness which were discussed in Part I. In view of that discussion there is no merit to defendant's assertion that the court improperly charged the jury or withheld relevant testimony.