Jack W. CHRISTNER, Plaintiff,

v.

POUDRE VALLEY COOPERATIVE
ASSOCIATION, Defendant.

No. 4313.

United States District Court
D. Colorado.

July 13, 1955.

Donald E. Kelley, U. S. Atty., Denver, Colo., for the District of Colorado, Robert D. Inman, Ass't. U. S. Atty., Boulder, Colo., for the District of Colorado (of counsel, Reid Williams, Denver, Colo., Atty. for the U. S. Dept. of Labor), for plaintiff.

Ralph B. Harden, Fort Collins, Colo., for defendant.

CHRISTENSON, District Judge.

Plaintiff sues for reinstatement and back salary by reason of defendant's refusal to reinstate him as an employee following his training duty as a reserve officer in the Armed Forces of the United States. He relies upon Title 50 U.S.C.A. Appendix, § 459(g) (3). This provides, inter alia, that private employees shall be granted a leave of absence for the purpose of performing training duty in the Armed Forces of the United States and that upon release from such training duty, if application be made for reinstatement within thirty days, they shall be reinstated in their positions without reduction in seniority, status or pay except as reduction may be made for all employees similarly situated. It appears that this section has not yet been construed by the courts with reference to a state of facts comparable to that involved here.

The defendant is a cooperative association organized under the laws of the State of Colorado and engaged in the sale of gasoline, oil and other products for automobiles and trucks. On or about June 9th, 1950, plaintiff was employed by the defendant as manager at a salary of $350 per month. He continued in such employment when he left on annual training duty as a reserve officer with the Armed Forces on August 9th, 1952. On August 12th, 1952, while he was engaged in this training duty, the board of directors of the defendant corporation discharged him for alleged causes arising prior to his departure. Most of the claimed causes were theretofore known to the board of directors, but no action was taken until after plaintiff's training duty had commenced. Within thirty days from his return, plaintiff requested reinstatement to his former position, which was refused. The plaintiff then enlisted the assistance of the United States attorney and counsel for the Department of Labor, which assistance was extended. presumably in reliance upon 50 U.S.C.A.Appendix, § 459(d). This suit resulted.

It appears from the file that early in the proceedings the defendant moved to dismiss the action because of asserted lack of jurisdiction, and that the motion was denied, apparently without extended argument. While a plea to the jurisdiction is contained in the answer, the pre-trial order recites, "That the Court was advised by counsel that no jurisdictional questions are involved." The trial proceeded and was concluded before me without reference to any question of jurisdiction.

Plaintiff contended at the trial that his discharge, and defendant's failure to reinstate him, were by reason of his training duty; and in any event, that the defendant was under the legal obligation to reinstate him upon request by reason of the express provision of the section referred to above. Reinstatement having been refused, it was asserted by plaintiff that he was entitled to judgment ordering his reinstatement and the payment of back salary from the time of such refusal to the time of reinstate-

ment, less income otherwise earned in the meantime.

Defendant contended that the Act relied upon by plaintiff is unconstitutional; that it covers neither reserve officers in general, nor the type or duration of duty to which plaintiff was ordered; that the plaintiff did not hold a position with "seniority, pay or status" as contemplated by the Act; that by the terms of his employment, he could be dismissed at will, with or without cause, and that there was no established seniority or status requiring restoration; that he was, in fact, reinstated by being invited to temporarily return until a new manager took over and by being paid termination and leave compensation; that in any event, he was discharged not because of his training duty but for reasonable and sufficient cause and that his reinstatement was therefore justly refused; that even though, technically, there may have been a wrongful failure to reinstate, relief would be limited to nominal damages at most. In addition to these contentions reflected in the evidence at the trial, it was asserted by the defendant in the pleadings that the plaintiff was estopped to maintain his claim, or was limited in the amount of recovery, if any, by the circumstances surrounding the obtaining of a purported letter of reference from the secretary of the defendant corporation and by delay in filing his action. The latter contentions were not argued on final submission but the case was argued and submitted on the other issues referred to above.

It is deemed unnecessary at this time to further notice the contentions above mentioned except as they relate to the question of jurisdiction. I will go no further than to comment that the evidence would furnish a substantial basis for the good faith claim on the part of the plaintiff that he was actually released by reason of his military activities, irrespective of other reasons which may or may not have constituted good cause for his discharge under other circumstances.

After submission, and in the course of my review of the statute, I became concerned with the question of jurisdiction and requested reargument orally and by briefs. Counsel with care and ability have now further advised the Court.

On the question of jurisdiction, plaintiff's position is that 50 U.S.C.A.Appendix, § 459(d) confers jurisdiction upon this Court to hear and determine the claims of an employee arising under § 459(g) (3) of the Act. It is argued that the legislative history of the Act is persuasive of this; that a liberal construction requires it; that any other construction would be unreasonable and would improperly deny the benefit of the Act to reserve officers; that the theories of diversity of citizenship or claim arising under federal law, would provide only an illusionary remedy to reserve officers in the position of plaintiff since diversity would be uncommon and few claims would exceed $3,000 in amount. Considering Congress' entire plan for the protection of the reemployment rights of veterans, plaintiff asserts that the specific grant of jurisdiction contained in § 459(d) should be held to apply to employees returning from training duty in the Armed Forces under § 459(g) (3), and that the Department of Justice's administrative interpretation of its duties to this effect is entitled to weight. The following expression by the Supreme Court in the case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, at page 1111, 90 L.Ed. 1230, 167 A.L.R. 110, is strongly relied upon by plaintiff:

> "Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits."

Plaintiff contends that § 459(d) and § 459(g) (3) should be construed to fit together "as parts of an organic whole."

The defendant contends on the question of jurisdiction that there is no statutory grant applicable to this case; that the grant of jurisdiction in § 459(d) is limited by its wording to a private employer who fails or refuses to comply with the provisions of subsection (b) and subsection (c) (1) and has no application to the claimed violation of subsection (g) (3); that only by extending the language of subsection (d) beyond its clear meaning and stated limitations and by ignoring established rules of statutory construction can the plaintiff claim a special grant of jurisdiction in cases of claimed violations of subsection (g) (3); that there are no other statutes granting jurisdiction to the Court in such case as this except on grounds of diversity of citizenship or claims founded upon a law of the United States; and that there being no claimed diversity of citizenship and no allegation or proof that plaintiff's claim exceeds $3,000, plaintiff's action must be dismissed in any event. Finally, defendant contends that any change in plaintiff's theory, or amendment to his pleadings concerning jurisdiction would be improper and futile and that the action must be dismissed unconditionally.

The so-called Veterans Reemployment Statutes consist of a number of federal acts passed over the years, now known as the "Universal Military Training and Service Act", as amended, 50 U.S.C.A. Appendix, §§ 451–473. The amendment now comprising § 459(g) (3) is a part of what is commonly referred to as the 1951 Amendment and appears as Public Law No. 51, 82 Congress, effective June 19, 1951. Section 9(g) (2) of the Selective Service Act of 1948 provided reemployment rights for persons entering upon active duty. It was so worded as to include reservists going on active duty even though they might be almost immediately released because of lack of physical fitness. Subsequently, there were excluded from § 9(g) (2) persons entering upon active duty for the purpose of determining their physical fitness. By the 1951 Amendment § 9(g) (3) was added to cover such persons.

While plaintiff places some reliance upon the legislative history of subsection (g) (3), my attention has been called to nothing in that history which indicates specifically that Congress intended to apply the grant of jurisdiction contained in subsection (d) to actions brought to enforce rights defined in subsection (g) (3). It is true that in that legislative history there seems nothing to spell out a contrary intent. It, therefore, seems necessary largely to look to the terms of the statutes which are quoted below. Emphasis by underscoring has been added by me to call attention to provisions which are deemed particularly significant.

The new section, § 9(g) (3) contained in 50 U.S.C.A.Appendix, § 459(g) (3), provides:

"(g) (3). Any employee who holds *a position described in paragraph (A) or (B) of subsection (b)* of this section shall be granted a leave of absence by his employer for the purpose of being inducted into, entering, determining his physical fitness to enter, or performing training duty in, the Armed Forces of the United States. Upon his release from training duty or upon his rejection, such employee shall, if he makes application for reinstatement within thirty days following his release, be reinstated in his position without reduction in his seniority, status, or pay except as such reduction may be made for all employees similarly situated."

Pertinent portions of paragraphs (A) and (B) of subsection (b) of the same section, referred to in the new subsection, and subsections (c) and (d), also bearing upon the problem, read:

"(b). * * *

"(A) *if such position was in the employ of the United States Government, its Territories, or possessions, or political subdivisions thereof, or the District of Columbia,* such person shall—

"(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of the employer, be restored to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case;

"(B) *if such position was in the employ of a private employer, such person shall—*

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *.

"(c) (1) *Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b)* (of this section) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and *shall not be discharged from such position without cause within one year after such restoration.*

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) (of this section) should be *so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.*

"(d) *In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1)* (of this section), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading *by the person entitled to the benefits of such provisions,* specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action: Provided, That any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits of such provisions. The court shall order speedy hearing *in any such case* and shall advance it on the calendar. Upon application to the United

States district attorney or comparable official for the district in which such private employer maintains a place of business, *by any person claiming to be entitled to the benefits of such provisions,* such United States district attorney or official, if reasonably satisfied that the person so applying *is entitled to such benefits,* shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to *comply with such provisions:* Provided, That no fees or court costs shall be taxed against any person *who may apply for such benefits:* Provided further, That only the employer shall be deemed a necessary party respondent *to any such action."*

It will be noted that 459(d), upon which plaintiff relies as a foundation for his claim that the Court has jurisdiction, applies "in case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1) (of this section)." What the plaintiff is suggesting is that the Court construe this specific language as meaning in effect that "in case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1) *or of subsection (g) (3) of this section, or any other provision of law granting reemployment rights to veterans,* the District Court of the United States for the district in which such private employer maintains a place of business shall have power. * * *"

 It will be noted that § 9(g) (1, 2) dealing with enlistees and others called to active duty by order, by express terms makes such enlistees and others "entitled to all of the reemployment rights and benefits provided by this section in the case of persons inducted under the provisions of this title * * *." Assuredly, a liberal construction such as contended for by the plaintiff, and such as I believe this Court should apply, would lead to a determination that all of the reemployment rights and benefits provided in the case of persons inducted under this title include the right to sue in the United States District Court and the right to the assistance of the United States attorney as expressly provided in subsection (d) with reference to inductees in private employment. But there is no equivalent or similar language contained in § (g) (3). The admonition of the Supreme Court in the Fishgold case, supra [328 U.S. 275, 66 S.Ct. 1111], that "the separate provisions of the Act as parts of an organic whole" are to be given a liberal construction for the benefit of the veteran, is not without qualification, since it is recognized that this can be done only insofar as "a harmonious interplay of the separate provisions permits." The wording of the two provisions involved would render interplay of their provisions, in view of the differing language, unharmonious and discordant.

The plaintiff claims under § 9(g) (3) of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 459, and states in paragraph 1 of his complaint that jurisdiction is based on § 9 thereof. The grant of jurisdiction in 50 U.S.C.A.Appendix, § 459(d), which plaintiff pleads, is limited by its wording to claims against a private employer who fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1). The plaintiff does not claim a failure or refusal on the part of the defendant to comply with the provisions of subsection (b) or subsection (c) (1). The grant of jurisdiction contained in the Universal Military Training and Service Act to United States district courts as contained in subsection (d) cannot be extended to claims arising under subsection (g) (3) without doing violence to the plain import of the language used by Congress.

 Courts possess the power, and it is their duty, to interpret and determine legislative intent, but in so doing they must not over-indulge or unduly speculate with respect to meanings not

reflected in the language of the statute. Boatright v. Steinite Radio Corporation, 10 Cir., 1931, 46 F.2d 385. True, the so-called "plain meaning rule" is not without its limitations. United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356. But when resort to other accepted standards of construction, in inquiry concerning the meaning of the statutory language, suggests no compelling reason for departure from the customary meaning of words, that meaning should be followed. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 488.

■ Even though I might believe that Congress, through inadvertence, failed to afford (g) (3) claimants the benefit of federal jurisdiction and the aid of the United States attorney, as provided in subsection (d), I can find no justification for an attempt by the courts to correct such inadvertence by doing violence to the plain import of the language used by Congress.

This would be true even though I personally believed—as I do—that claimants under § (g) (3) should enjoy as a matter of fairness and practicality the benefit of subsection (d). It may be that the exercise of jurisdiction by state courts in such cases will not fully safeguard the rights of veterans. The admitted absence of federal jurisdiction over many other types of cases may be disadvantageous to certain litigants but this is no reason for usurpation by federal courts. On the other hand, it has been suggested that under certain circumstances, the enforcement of reemployment rights by state courts may be advantageous to the veteran. Tsang v. Kan, 9 Cir., 1949, 173 F.2d 204, certiorari denied 337 U.S. 939, 69 S.Ct. 1515, 93 L.Ed. 1744; 29 A.L.R. 2d 1340. It may be that considerations of public policy would commend the granting of jurisdiction, or that the exercise of jurisdiction would be consistent with the general plan or scheme evinced by Congress. However, unless the statutory grant may be so construed without doing violence to the plain meaning of the words used, as viewed in the light of their legislative history and other helps in interpretation, it would seem beyond the power of a court to pull jurisdiction out of the air, as it were. A liberal construction of a statute cannot mean an inaccurate and unjustifiable construction. Moreover, if my conclusions as to the limitations of subsection (d) are found ultimately to be correct, prompt recognition of those limitations would offer a better hope for sound corrective legislation than apologetic, hesitant and ineffective acceptance of it as meaning something which it does not say.

■ It is fundamental that this Court is one of limited jurisdiction and that its jurisdiction in the particular case must affirmatively appear if it is to be exercised. McNutt v. General Motors Acceptance Corporation of Indiana, Inc., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; United States v. Hatch, 154 U.S. 596, 14 S.Ct. 1212, 22 L.Ed. 326; In re Confiscation Cases (United States v. Clarke), 20 Wall. 92, 87 U.S. 92, 22 L.Ed. 320. See also the late case of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra.

■ Accordingly, it is my opinion that the grant of jurisdiction to district courts and the delegation of authority to United States attorneys, as contained in Title 50 U.S.C.A.Appendix, § 459(d), do not apply to actions brought solely to enforce rights granted by 50 U.S.C.A. Appendix, § 459(g) (3). Unless the Court has jurisdiction under other sections found in the Judicial Code, the action must be dismissed. Insular Police Commission v. Lopez, 1 Cir., 1947, 160 F. 2d 673, certiorari denied 331 U.S. 855, 67 S.Ct. 1743, 91 L.Ed. 1863. See also Odell v. Humble Oil & Refining Co., 10 Cir., 1953, 201 F.2d 123, certiorari denied 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367.

Diversity of citizenship between the parties admittedly is absent so § 1332 of the Judicial Code, 28 U.S.C.A. would not be involved, even though the amount in controversy exceeded the requisite amount.

Section 1337 of the Code, 28 U.S.C.A. § 1337 has no application. The present action is not one under any act of Congress in the exercise of the power to regulate interstate commerce. It is an act wholly by virtue of the war power and involving in this case purely intra-state commerce.

■ This action is not one for the recovery of a fine, penalty or forfeiture under 28 U.S.C.A. § 1355.

■ This is not an action for deprivation of civil rights within the contemplation of 28 U.S.C.A. § 1343; clearly it is not one to recover damages for injury to person or property or because of the deprivation of any right or privilege of a citizen of the United States or by any act done in furtherance of any conspiracy mentioned in 42 U.S.C.A. § 1985, or to recover damages from any person failing to prevent or aid in preventing any wrongs mentioned in said section. It is not an action to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

■ The United States did not commence this suit within the purview of 28 U.S.C.A. § 1345, even though the attorney for the Department of Labor and the United States attorney have interested themselves, pursuant to the present policies of the respective offices, in plaintiff's behalf. Nor has any agency or officer of the United States been authorized by law to commence the suit.

■ The only possible ground for assuming jurisdiction is that this is a civil action arising under the laws of the United States, in which event, the matter in controversy must exceed the sum or value of $3,000, exclusive of interest and costs. 28 U.S.C.A. § 1331.

There can be no doubt that this is a civil action which arises under the laws of the United States. See United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; United States v. Ohio Oil Co., 10 Cir., 1947, 163 F.2d 633, certiorari denied 333 U.S. 833, 68 S.Ct. 459, 92 L.Ed. 1117. If the matter in controversy, exclusive of interest and costs, exceeds $3,000, jurisdiction exists and I should decide the case on the record heretofore made, after permitting such amendments to conform with proof and such supplemental proof, if any, as the circumstances of the case may warrant in the interest of justice. If the answer as to the question as to the amount in controversy is in the negative, it is my duty to dismiss plaintiff's action for want of jurisdiction. Carr v. Fife, 156 U.S. 494, 15 S.Ct. 427, 39 L.Ed. 508; McNutt v. General Motors Acceptance Corporation of Indiana, Inc., supra; Christenson v. Hogdal, 1952, 91 U.S.App. D.C. 251, 199 F.2d 402; Stern v. Beer, 6 Cir., 1952, 200 F.2d 794; 28 U.S.C.A. § 1653; but see International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 1941, 121 F.2d 561; also Joy v. Hague, 1 Cir., 1949, 175 F.2d 395, certiorari denied 338 U.S. 870, 70 S.Ct. 147, 94 L.Ed. 534.

■ Having held that § 9(d) does not apply to the plaintiff's case for the purpose of affording jurisdiction to United States District Courts, it follows that it cannot apply for the purpose of providing him a special remedy or a measure of damage not otherwise available. Subsection 9(d) authorizes suit by those referred to therein, and by those only, for restitution and damages.

Without recourse to the latter provisions, however, it is my opinion that employees wrongfully denied reinstatement under § 9(g) (3) have an enforceable claim, at least for damages. Wrongful failure to reinstate a serviceman contrary to the express terms of § 9(g) (3) will not be justified, or permitted to go unnoticed by the courts, even though no special remedy is provided. It seems doubtful, in the absence of express provisions therefor in the statute, that reinstatement could be ordered, especially in favor of one employed for an indefinite term. However, I am unwilling to believe that

a court having jurisdiction of the claim for wrongful refusal to reinstate a serviceman in plaintiff's position would be impotent to render some relief, even though the employment were for an indefinite term, and ordinarily would be subject to termination without notice and without cause. I will advert to the latter matter later, but now it seems sufficient to note that in my opinion, to limit the Court to the award of mere nominal damages in cases where wrongful failure to restore indefinite term employment is involved, would render § 9(g) (3) a mockery to the serviceman. His rights, so solemnly assured by Congress, in such event could be cut off by employers with assurance that they could suffer no substantial detriment for flaunting the express provisions of the Act.

As difficult as it has seemed to fasten upon a sound theory to render the Act effectual as to indefinite term employees, it seems necessary to pursue this path of inquiry far enough to determine whether on any basis the amount in controversy may exceed the jurisdictional minimum. Would a violation by defendant of rights under § 9(g) (3) entitle plaintiff to recover back wages accruing between the time of his demand for reinstatement and his actual reinstatement? This theory must be rejected as illogical. It would serve to freeze the employee to the benefits of his employment without legal justification and beyond the benefits accorded by § 9(b) to servicemen presumably in a preferred position. Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Travis v. Schwartz Manufacturing Co., 7 Cir., 1954, 216 F.2d 448; Spearmon v. Thompson, 8 Cir., 1949, 173 F.2d 452; Id., 8 Cir., 167 F.2d 626, certiorari denied 335 U.S. 822, 69 S.Ct. 44, 93 L.Ed. 376; Delozier v. Thompson, 335 U.S. 886, 69 S.Ct. 238, 93 L.Ed. 424; but see also Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87. Would the award of back wages for a year immediately following demand for reinstatement be justified? Apparently not under every circumstance for even § 9(b) claimants cannot obtain more and may obtain less. Would damages for wages during a "reasonable time" short of a year following demand for reinstatement be awardable, or for a period corresponding to the usual two-week or month's notice? See Trailmobile Co. v. Whirls, supra; Atchison, T. & S. F. R. Co. v. Andrews, 10 Cir., 1954, 211 F.2d 264. Or would the amount of damages, if any, rest in the discretion of the Court without specific standard?

There seem valid objections to any of these formula, as applied to § 9(g) (3) claims. But I need go no further here than to determine, as I do, that none of them offers, any possibility for recovery of as much as $3,000 or for a realistic good faith claim to that extent. If the plaintiff were given back salary since his demand for reinstatement, less amounts he otherwise earned during this period, his recovery would be less than $3,000, exclusive of interest. Maximum for a year would be hardly more than $1,000. Any possible claim on these theories could be disregarded as frivolous. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Odell v. Humble Oil & Refining Co., supra.

An indefinite term contract is terminable at will and without cause, and its termination even though wrongful, ordinarily cannot give rise to an action for anything except nominal damages. 35 Am.Jur., §§ 26–27, pp. 462–463; Kunz v. Colnon, D.C.Kan.1944, 54 F.Supp. 673; Mitchell v. Stanolind Pipe Line Co., 10 Cir., 1950, 184 F.2d 837; Boatright v. Steinite Radio Corporation, supra; Odell v. Humble Oil & Refining Co., supra.

The last mentioned cases from the Tenth Circuit, and particularly the Humble Oil case, appear to be conclusive in principle against the granting of relief to the plaintiff in amount sufficient to involve this Court's jurisdiction on any theory of compensatory damage, since they are based upon the thesis that no substantial damage may result from the termination of an indefinite term contract. But, too, they may at the same time suggest the main possibility for the assumption

of jurisdiction by this Court, or at least for the award of substantial damages for violation of § 9(g) (3) by whatever court may have jurisdiction.

It is noted that the rationale of the Humble Oil decision is that *in the absence of controlling statute to the contrary,* the discharge of an employee in violation of an employment contract, irrespective of motive therefor, constitutes only a breach of contract and not a tort, and recoverable damages are limited to those flowing from the contractual breach. The discharge of plaintiff in the Humble Oil case was held to involve only a breach of contract despite its claimed motivation by a desire on the part of the employer to retaliate, contrary to law, for testimony given by the employee before a grand jury. This was because 18 U.S.C.A. § 1503, protecting parties from reprisals in testifying before grand juries, was held to have been passed primarily in the interest of the public. In the case at bar, we do not have a statute of this nature, but one in form and substance specifically for the benefit of the employee bringing the suit, and upon which his action is directly founded. In Mitchell v. Stanolind Pipe Line Co., supra [184 F.2d 838], the Court in denying recovery, said:

> "No claim is made that the discharge was in violation of any right given the plaintiff by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., or by any state law. No question of public health, safety or welfare is involved so we have no difficulty in determining that the complaint did not state a cause of action."

Under the reasoning contained in the decisions from this circuit, it is possible that employees in the position of plaintiff may claim in good faith punitive damages in such amount as to afford United States District Courts jurisdiction for the vindication of rights granted under § 9(g) (3). See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15. Irrespective of whether, in any given case, the jurisdiction of this Court would thereby be sustained, it seems much more reasonable and practical to me that violations of § 9(g) (3) by employers under indefinite term hirings would invite against them the assessment of punitive, as well as nominal or limited compensatory damages, than that they could violate this section knowing that all any Court could do about it would be to administer a tap on the wrist. There exists at least hope for a practical basis of enforcement as applied to indefinite term contracts in the theory of punitive damages. I cannot see such hope on any other theory, in view of the present wording of the statute.

Defendant's motion to dismiss for failure of the plaintiff to allege and prove the jurisdiction of this Court on any tenable ground must be granted. Since neither party has been afforded an opportunity to argue the theory of punitive damages postulated herein, I believe that the dismissal should be without prejudice to plaintiff's right, if he be so advised, to apply for leave to amend to make a claim of jurisdiction other than on the ground set out in the complaint. In view of the possibility that punitive damages will lie, it may not sufficiently appear that the maximum possible recovery is less than the minimum jurisdictional amount. Odell v. Humble Oil & Refining Co., supra. There is grave doubt in the Court's mind, however; because of failure of plaintiff to invoke the jurisdiction of this Court on the theory of punitive damages, that an assertion of a claim on that theory is now timely. This is not because amendments may not be made after trial to plead a jurisdiction actually existing, as we have seen this may be done. The difficulty is that the controversy may not have involved, and may not now involve, apart from the pleadings, more than $3,000, since punitive damages have thus far not been claimed.

However, as the parties have not yet been given an opportunity to argue the matter, it would seem premature to now pass finally upon the question of whether punitive damages are recoverable or

whether a claim therefor, if interposed, would sustain this Court's jurisdiction. A ruling will be made on this point if and when an appropriate application to amend or to reopen, or to do both, is filed. For this purpose, plaintiff is allowed twenty days from date of this decision. If, as was inferred during the argument, plaintiff desires to rely solely on the jurisdiction asserted in the complaint, upon the expiration of the twenty days, this dismissal will be deemed final. Odell v. Humble Oil & Refining Co., supra; Sharp v. Barnhart (James v. Barnhart), 7 Cir., 1941, 117 F.2d 604, certiorari denied Canterbury v. Barnhart, 313 U.S. 576, 61 S.Ct. 1099, 85 L.Ed. 1533.

In the latter event, an appropriate order unconditionally dismissing the complaint for lack of jurisdiction should then be presented to the Court by defendant's counsel for signing and entry.