COMMONWEALTH OF
MASSACHUSETTS,
Plaintiff,

v.

PHILIP MORRIS INC., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, B.A.T. Industries P.L.C., Lorillard Tobacco Company, Liggett Group, Inc., New England Wholesale Tobacco Co., Inc., Albert H. Notini & Sons, Inc., The Council for Tobacco Research—U.S.A., Inc., and The Tobacco Institute, Inc., Defendants.

Civil Action No. 96–10014–GAO.

United States District Court,
D. Massachusetts.

May 20, 1996.

Thomas M. Sobol, Brown, Rudnick, Freed & Gesmer, Boston, MA, Ronald L. Motley, Motley, Loadholt, Richardson & Poole, Charleston, SC, L. Scott Harshbarger, Attorney General's Office, Torts Division, Boston, MA, Michael P. Thornton, Thornton, Early & Naumes, Boston, MA, Jeffrey D. Woolf, Boston, MA, Laurence H. Tribe, Cambridge, MA, Richard M. Heimann, Lieff, Caraser, Heimann & Bernstein, San Francisco, CA, for Com. of Massachusetts.

Kenneth J. Parsigian, Marshall Simonds, Goodwin, Proctor & Hoar, Boston, MA, Herbert M. Wachtell, Peter C. Hein, Ben M. Germana, Wachtell, Lipton, Rosen & Katz, New York City, for Philip Morris, Inc.

Robert F. McDermott, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Company.

John H. Henn, David R. Geiger, Mark D. Rosen, Foley, Hoag & Eliot, Boston, MA, Stephen D. McCormick, Kirkland & Ellis, Chicago, IL, Majorie Press Lindblom, Kirkland & Ellis, New York City, David Bernick, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corp.

Mary Elizabeth McGarry, Roy L. Reardon, Joseph M. McLaughlin, Jennifer S. Dominitz, Simpson, Thacher & Bartlett, New York City, James S. Dittmar, Joseph C. Marrow, Hutchins, Wheeler & Dittmar, Boston, MA, for B.A.T. Industries P.L.C.

Gael Mahony, Richard M. Zielinski, Boston, MA, Theos D. McKinney, Hill & Barlow, Boston, MA, Gene E. Voigts, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co.

Samuel Adams, Joseph J. Leghorn, Alexis S. Hamdan, Warner & Stackpole, Boston, MA, James V. Kearney, Latham & Watkins, New York City, James Cherney, Latham & Watkins, Chicago, IL, for Liggett Group, Inc.

Nelson Gediman, Boston, MA, for New England Wholesale Tobacco Co., Inc.

Robert Gilbert, Law Offices of Robert J. Gilbert, P.C., Andover, MA, for Albert H. Notini & Sons, Inc.

Steven Klugman, Joseph P. Moodhe, Joseph W. Rand, Debevoise & Plimpton, New York City, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal & Peisch, Boston, MA, for Council for Tobacco Research–U.S.A., Inc.

Robert J. Muldoon, Jr., David A. Guberman, Sherin & Lodgen, Boston, MA, Paul R. Duke, Covington & Burling, Washington, DC, for Tobacco Institute, Inc.

Harry G. Potter, III, Special Assistant Attorney General, Austin, TX, for Attorney General of the State of Texas.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

After this action was commenced in the Massachusetts Superior Court, the defendants removed it to this Court. The plaintiff Commonwealth of Massachusetts has objected that the removal was improper and now asks that it be remanded. The principal issue raised by Massachusetts' motion is whether the complaint presents a "federal question" lying within the jurisdiction of this Court or whether the claims asserted arise only under state law. The defendants also contend that the action is equivalent to a claim on behalf of the United States, and so falls within this Court's jurisdiction. For the reasons that follow, the Court concludes that none of the causes of action pleaded in the complaint arises under federal law, that the action is not one on behalf of the United States and that this Court accordingly lacks subject matter jurisdiction over it. The plaintiff's motion is therefore granted, and the case is remanded to the Massachusetts state courts.

### The Complaint

Massachusetts' action is brought against six cigarette manufacturers, two trade associations in the tobacco industry, and two Massachusetts wholesalers of tobacco products. The complaint alleges that "[e]ach year, the Commonwealth must spend millions of dollars to purchase or provide medical and related services for Massachusetts citizens suffering from diseases caused by cigarette smoking." Complaint, ¶ 4, at 2–3. The "smoking-related costs to the Commonwealth" are said to include, but not be limited to, "[m]edical assistance provided under Mas-

sachusetts' Medicaid program pursuant to [Mass.Gen.L. ch.] 118E" and "[m]edical assistance provided under the CommonHealth Program pursuant to [Mass.Gen.L. ch.] 118E, §§ 16, 16A." *Id.*, ¶ 6, at 3–4. The complaint seeks "both monetary damages and injunctive relief." *Id.*, ¶ 5, at 3.

The claims are stated in five counts: the undertaking and violation of a special duty regarding the health effects of smoking (Count I); sales of tobacco products in breach of a warranty of merchantability (Count II); conspiracy to suppress information regarding the safety of smoking (Count III); restitution for injury caused by wrongful conduct (Count IV); and unjust enrichment from unlawful conduct (Count V). *Id.*, ¶¶ 184–216, at 66–73. The complaint recites that the claims are asserted pursuant to specific authority conferred by two recent enactments that purport to create causes of action on behalf of Massachusetts against any "third party" liable for medical expenses of a person who has received medical assistance payments, Mass.Gen.L. ch. 118E, § 22, and, in particular, against cigarette manufacturers, 1994 Mass. Acts, ch. 60, § 276. Complaint ¶ 6, at 3. Except for a passing reference to the fact that the federal government bears some of the costs of the Medicaid program, the complaint contains no express invocation, or even mention, of federal law.

### The Removal

In removing the action, the defendants relied on 28 U.S.C. § 1441, which authorizes the removal of any civil action that lies within the original jurisdiction of the United States District Courts. The defendants contend that Massachusetts' claims to recover benefits paid under the Medicaid program are, by their nature and regardless of what they are called, claims that arise under federal law and thus lie within the original "federal question" jurisdiction of this Court pursuant to 28 U.S.C. § 1331.[1] In addition, they say, because the United States would receive its share of any recovery by Massachusetts from these defendants of benefits paid to Medicaid recipients, the United States is, in effect, an unnamed plaintiff with a real interest in the suit, giving this Court original jurisdiction under 28 U.S.C. § 1345.[2] By its remand motion, Massachusetts attacks each of these asserted bases for jurisdiction. In particular, it disavows any intention to rely on federal law and insists that the causes of action asserted are not federal in their nature.

### 1. *FEDERAL QUESTION*

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, establishes the medical assistance program known generally as "Medicaid." Medicaid is "a cooperative Federal and State program which provides payment for medical services to eligible individuals and families." *Haley v. Comm'r of Pub. Welfare*, 394 Mass. 466, 476 N.E.2d 572, 574 (1985). "The Federal Government shares the costs of Medicaid with States that elect to participate in the program. In return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services." *Atkins v. Rivera*, 477 U.S. 154, 156–57, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986) (citations omitted).

A State that elects to participate in the Medicaid program must submit a "State plan[ ] for medical assistance" to the Secretary and obtain her approval of the plan. 42 U.S.C. § 1396. The federal statute sets forth in considerable detail certain mandatory features of any acceptable State plan. Pertinent to the present controversy, a State plan must provide:

> (A) that the State ... will take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan, including—
>
>  ....

---

**1.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**2.** Section 1345 provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

(ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against third parties ... [and]

. . . .

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State ... will seek reimbursement for such assistance to the extent of such legal liability, ...

*Id.,* § 1396a(a)(25).

Additionally, State plans must require individuals who receive benefits "to assign the State any rights ... to support ... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A); *see also* 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(B). Regulations of the Department of Health and Human Services further specify a participating State's obligations. *See* 42 C.F.R. §§ 433.135–433.153.

Massachusetts' participation in the Medicaid program is governed at the state level by Mass.Gen.L. ch. 118E. That statute reflects the State's obligation to comply with the requirements imposed by Title XIX and the regulations adopted under its authority. *See, generally, e.g.,* Mass.Gen.L. ch. 118E, §§ 9, 11, 12, 15. In particular, section 22 of chapter 118E provides that the State "shall be subrogated to a [Medicaid recipient's] entire cause of action or right to proceed against any third party and to a [recipient's] claim for monies to the extent of assistance provided" under Medicaid. Section 22 further purports to create for Massachusetts "a separate and independent cause of action to recover, from any third party, assistance provided to a claimant under [Medicaid], which cause of action shall be in addition to other causes of action." As noted above, the complaint asserts that the present action is authorized, in part, by section 22. Complaint, ¶ 6, at 3.

In addition, 1994 Mass. Acts, ch. 60, § 276, authorizes an action on behalf of the state division of medical assistance "against any liable third party who is a manufacturer of cigarettes to recover the full amount of medi-cal assistance provided by the Commonwealth under [Medicaid] ... and all reasonable expenses in connection with bringing such an action, if such action prevails." That authority includes, but is not limited to, subrogation rights, and is "in addition to any rights or powers granted under state or federal law." *Id.*

In support of federal jurisdiction, the defendants contend that claims to recover Medicaid expenditures, though they ostensibly are brought exclusively under the cited provisions of Massachusetts law, necessarily involve the enforcement of Title XIX's requirement that Massachusetts pursue liable third parties, and the claims therefore "arise under" that mandate of federal law.

"Especially when considered in light of § 1441's removal jurisdiction, the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983). "[I]n exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986).

Certainly in many cases it can be an appropriate generalization to say that the claim "arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). But federalism, especially "cooperative federalism," involves an interplay of federal and state roles too subtle to be ruled entirely by simple, general maxims. In the present case, for example, the maxim is unhelpful because it begs the question which law has "create[d] the cause of action." The complaint describes its causes of action as creatures of state law, while the defendants contend that Title XIX effectively created a cause of action to recover Medicaid payments

from liable third parties by commanding participating States to pursue such recoveries.

■■■ The parties agree that the complaint alone must be the reference point for determining what claims are presented. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987); *Franchise Tax Board,* 463 U.S. at 9–10, 103 S.Ct. at 2846–47; *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow,* 478 U.S. at 809 n. 6, 106 S.Ct. at 3233 n. 6. On its face, Massachusetts' complaint claims a right to recover under state law theories only and rather pointedly eschews any reliance on federal law. Nonetheless, even in such a case where only state claims are pleaded, the claims may yet "arise under" federal law sufficient to invoke federal courts' jurisdiction if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one [of the claims] is 'really' one of federal law." *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848; *see also Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■■■ Here, there is no question of federal law, substantial or otherwise, to be determined in the prosecution of the pleaded claims. Vindication of the rights that Massachusetts' claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of Massachusetts' claims. Whether the defendants, as "third parties," are liable to Massachusetts for costs expended under Medicaid, either directly or by way of subrogation, will be judged by reference to Massachusetts law.

Though the federal statute requires a State to enforce such third party liability where it may be found, Title XIX does not establish any ground for such liability, nor does it even require that any ground for liability be established by the State. So, for example, Title XIX requires a State to sue a third party who by his negligence has injured a person whose medical expenses were paid with Medicaid funds, but only if the State's law makes a negligent person liable for the injury he has caused. In the case of a hypothetical State with no recognized tort action for negligently caused injury, the federal Medicaid statute would not require that the State fashion such a remedy just to carry out the federal mandate to collect expended Medicaid funds. Rather, the State has the obligation to "take all reasonable measures to ascertain the legal liability of third parties," 42 U.S.C. § 1396a(a)(25)(A), and to pursue recovery in those cases "where such a legal liability is found to exist." *Id.,* § 1396a(a)(25)(B). No obligation is imposed on the State to see to it that "such a legal liability" does exist. And where it does exist, federal law has nothing to say about its proof, and the action to establish the liability may proceed on entirely non-federal grounds.[3]

For much the same reasons, federal jurisdiction cannot be justified on the premise that the state-defined liability claims are "really" federal claims, as if when the state mask were peeled away the federal identity would be discovered. As noted, there is no element of proof in the asserted claims that comes from a source of federal law. Rather, in arguing that a claim to recover Medicaid payments is by nature a federal one, the defendants' point seems to be a more ethereal one—that it is a federal spirit that animates the action.[4] But they refer to no

---

**3.** The defendants may have defenses to liability that arise under federal law. But it is clear that the availability of viable federal defenses does not provide a basis for removal under § 1441. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2847–48.

· Of course, it is possible that the third party's liability to the Medicaid recipient would come about because a federal law has provided for such liability, as in the case, for example, of the

an injured seaman who has a right of recovery under the Jones Act, 46 U.S.C.App. § 688 *et seq.* But that is a very different case from the one presented.

**4.** The defendants assume, apparently, that Massachusetts is pursuing such a claim only because of the federal requirement, although that proposition is not self-evidently true. It is plausible that Massachusetts would pursue its claims even without the federal mandate. Massachusetts' own state interests may wholly—but indepen-

authority for the notion that a federal motive for pursuing a state claim provides in itself a basis for federal court jurisdiction.

■ Indeed, that idea has been specifically rejected in this Circuit in *Inter–American Univ. of Puerto Rico, Inc. v. Concepcion,* 716 F.2d 933 (1st Cir.1983). In that case, Inter–American University sought to collect money that had been loaned under the National Direct Student Loan ("NDSL") program, 20 U.S.C. §§ 1087aa–1087ii (1983). Applicable regulations of the Department of Education required participating institutions to take certain steps to collect overdue loans. *See* 34 C.F.R. §§ 674.42–674.50 (1983). It was contended that this federal mandate made the collection action a "federal question." The Court held to the contrary, however, and affirmed a dismissal of the case for lack of subject matter jurisdiction. The Court concluded that, notwithstanding the general federal framework within which the NDSL program functioned, the university's suit to collect the loan "does not involve a right that 'will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.'" *Inter–American Univ.,* 716 F.2d at 934 (quoting *Gully,* 299 U.S. at 112, 57 S.Ct. at 97). The fact that loaned funds "derived in part from federal contributions" did not necessarily "give the federal courts jurisdiction to hear any dispute arising from the NDSL loan agreement. It is the nature of the action before the court, not the nature of the loan program, that establishes the existence or absence of federal jurisdiction." *Inter–American Univ.,* 716 F.2d at 934. In other words, the presence of an overarching federal influence on a program does not make into a federal question a suit brought under state law, even where the plaintiff is pursuing rights under state law because federal law has required it to do so. That is the case we have here.[5]

The First Circuit once followed reasoning similar to that suggested by the defendants to hold that a federal question was presented by a complaint to enforce a contract that was mandated by federal law. *Local Division No. 714, Amalgamated Transit Union, AFL–CIO v. Greater Portland Transit Dist. of Portland, Maine,* 589 F.2d 1, 6–8 (1st Cir.1978).[6] However, in another case presenting essentially the same issue, the Supreme Court later rejected that rationale as a basis for federal question jurisdiction. *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union,* 457 U.S. 15, 29, 102 S.Ct. 2202, 2210, 72 L.Ed.2d 639 (1982); *see also Greenfield & Montague Transp. Area v. Donovan,* 758 F.2d 22, 25–26 (1st Cir.1985). In *Jackson Transit Auth.,* the Supreme Court noted that whether a suit qualifies as a "federal question" for jurisdiction purposes may turn on what Congress intended in enacting the federal statute at

dently—coincide with the gist of the federal command, not an unimaginable state of affairs in a regime of "cooperative federalism."

5. It does not matter that Massachusetts was not subrogated to a Medicaid recipient's claims against third parties before the enactment of the state Medicaid statutes. The defendants have pointed out that in *Inter–American* the university brought what was essentially a common law suit on a note, a cause of action that existed long before the NDSL program or its collection requirements, whereas, in contrast, the state subrogation right now embodied in Mass.Gen.L. ch. 118E, § 22 was created specifically to comply with the mandate of Title XIX. But that difference does not distinguish the *Inter–American* case or weaken the applicability of its holding. Subrogation gives standing—or a right to sue—to a party whose interest in the cause of action is derived from the person who was directly injured by the third party's wrongful conduct. Subrogation gives the subrogee the right to be substituted in an action for the "natural" plaintiff. Rules of subrogation have nothing to do with the substantive cause of action by which the liability of the third party will be judged. What Title XIX requires is that States take steps to stand in the legal shoes of Medicaid recipients who have valid claims for medical expenses against third parties. It neither creates such claims nor instructs the States as to what legal theories either may or should be pursued. The claims of the recipients, which the States are commanded to take up and prosecute, may be state or federal, common law or statutory. The right of subrogation affects the substance of the claims not at all, nor does it change their character as "federal" or "state."

6. The case concerned a contract entered into pursuant to section 13(c) of the Urban Mass Transportation Act, 49 U.S.C.App. § 1609(c). Section 13(c), like Title XIX, requires that state and local agencies fulfill certain conditions in exchange for federal funding. *See Local Div. No. 714,* 589 F.2d at 2 & n. 1.

issue. 457 U.S. at 21, 102 S.Ct. at 2206. In this case, the intent seems clear. Nothing in Title XIX suggests that Congress intended that state suits to recover Medicaid funds from liable third parties should be thought of as presenting federal, rather than state, claims. On the contrary, the language of the statute itself shows the congressional intent rather plainly to have been to commit the collection process to those remedies available for such purposes under state law. 42 U.S.C. § 1396a(a)(25)(A), (B).[7]

Finally, the defendants point out that the Massachusetts Supreme Judicial Court ("SJC") has said that subrogation actions against liable third parties to recover expended Medicaid funds are actions "based in" federal law: "Because the Commonwealth's pursuit of reimbursement is required by Federal law, the right of subrogation is 'based in' Federal law." *Harlow v. Chin,* 405 Mass. 697, 545 N.E.2d 602, 610 (1989). In that case, the SJC was interpreting a Massachusetts statute respecting offsets to damage awards in medical malpractice actions. Mass.Gen.L. ch. 231, § 60G. Under the statute, a trial judge could deduct from the plaintiff's recovery any damages that were "replaced, compensated, or indemnified pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act ... or any other collateral source of benefits whatsoever, except for gratuitous payments or gifts." *Harlow,* 545 N.E.2d at 609, (quoting § 60G(a)). There was an exception, however, for benefits provided by an entity "whose right of subrogation is based in any federal law." *Id.* 545 N.E.2d at 610. The question presented for decision was whether the Commonwealth's subrogation claim under Mass.Gen.L. ch. 18, § 5G, predecessor to Mass.Gen.L. ch. 118E, § 22, the statute Massachusetts sues under in this case, was

one "based in federal law," and the Court's answer was that it was. The defendants argue that if Massachusetts itself classifies the subrogation claim as one based not in Massachusetts law but in federal law, the Commonwealth should not be permitted here to contend otherwise.

The best answer to this argument is the briefest one. The *Harlow* case simply does not matter in the present context. Strictly speaking, the question in *Harlow* was an interpretation of Massachusetts law. It was certainly not an interpretation of federal jurisdiction under 28 U.S.C. § 1331. Even if it had been, of course, a state court's decision regarding a federal jurisdictional issue, while perhaps deserving respectful consideration, would not have any controlling precedential value.

In sum, the claims alleged in the complaint do not "arise under" the Constitution or laws of the United States within the meaning of 28 U.S.C. § 1331, and the case was not removable on that ground under 28 U.S.C. § 1441.

### 2. *UNITED STATES AS PLAINTIFF*

■ Section 1345 provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The Supreme Court has emphasized that the statute's scope is limited to agencies "expressly authorized to sue." *FSLIC v. Ticktin,* 490 U.S. 82, 85, 109 S.Ct. 1626, 1628, 104 L.Ed.2d 73 (1989). The defendants contend that because Title XIX requires Massachusetts to pursue third-party recoveries and because half of any recovery will inure to the United States, Congress has thus "expressly authorized" the State to sue on behalf of the

---

**7.** As regards congressional intent, it is interesting to note that in the Employees Retirement Income Security Act ("ERISA"), Congress specifically excluded from a broad preemption provision claims "for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.] which would not have been payable if such acquired rights had been executed before pay-

ment with respect to such items or services by the group health plan." 29 U.S.C. § 1144(b)(8)(B); *see also Belshe v. Laborers Health and Welfare Trust Fund for Northern California,* 876 F.Supp. 216, 220–21 (N.D.Cal.1994). Implicit in this provision is Congress' recognition that the described claims, arising under an approved State Medicaid plan, were state law claims subject to preemption unless excluded.

United States and the action is effectively one by the United States within § 1345.

The defendants' parsing of the statutory text is selective, focusing on the phrase "expressly authorized" but ignoring the words that immediately precede it. Massachusetts is not an "agency or officer" of the United States. For purposes of § 1345 the term "agency" means "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more *limited* sense." 28 U.S.C. § 451 (emphasis supplied). Another court, applying that definition, has held that the District of Columbia is not an "agency" for the purposes of § 1345, noting that the District's receipt of funding directly from and ultimate management by Congress did not transform it from a local government into a proprietary interest of the United States. *District of Columbia v. Owens–Corning Fiberglas,* 604 F.Supp. 1459, 1461–62 (D.D.C. 1985). If the District of Columbia, which would not exist but for its creation by the federal government, is not an agency of the United States under § 1345, then certainly one of the several sovereign States is not either.

The defendants must therefore say that, although Massachusetts is not *actually* an "agency" of the United States, it is *just like* one in the present context. However, they have identified no case law, nor can the Court identify any, in which parties other than the United States or an actual federal agency have successfully employed § 1345 to pursue their claims in federal court. There are cases where attempts to do so were rebuffed. *See Jacobs v. Tawes,* 250 F.2d 611, 613 (4th Cir.1957) (noting lack of jurisdiction under § 1345 because "appellant is not the United States, nor is he an 'agency or officer thereof expressly authorized to sue by Act of Congress,' and there is nothing in his having made a contract with the Navy which gives him such a status"); *Christner v. Poudre Valley Co-op. Ass'n,* 134 F.Supp. 115, 123 (D.Colo.1955) ("The United States did not commence this suit within the purview of 28 U.S.C.A. § 1345, even though the attorney for the Department of Labor and the United States attorney have interested themselves, pursuant to the present policies of the respective offices, in plaintiff's behalf."), *aff'd,* 235 F.2d 946 (10th Cir.1956).

The one case cited by the defendants where jurisdiction was thought to lie under § 1345 despite the absence of the United States as a named plaintiff involved a claim that had been assigned to the plaintiff by the United States Coast Guard. *Todd Shipyards Corp. v. Hercules, Inc.,* No. 84–2300, 1987 WL 14343, at *1 (E.D.La. July 17, 1987), *aff'd,* 859 F.2d 1224 (5th Cir.1988). The Court noted perfunctorily that § 1345 provided a jurisdictional basis for that claim, but it does not appear that the basis of jurisdiction was a contested issue in the case. The Court also noted that the case was properly brought under 28 U.S.C. § 1333 (admiralty and maritime jurisdiction). In these circumstances, the Court's statement about § 1345 jurisdiction should not be asked to bear much precedential weight. In any event, even if it is true that a claim formally assigned by an agency of the United States to a non-agency can be brought in federal court under § 1345, that case is a very different one from this. Massachusetts is not presenting its claims as formally assigned claims from the United States. Unlike the Todd Shipyards Corp., which specifically asserted the right to stand in the shoes of the federal assignor and chose to commence its action in the federal forum, Massachusetts resists any characterization of its claims as federal and wants to forego the federal forum.

Without any supportive direct authority, the defendants rely primarily on cases in which, in other contexts and under other jurisdictional statutes, courts have considered state actors to be agents of the United States. *See, e.g., Maine v. Commissioner, Maine Dep't of Human Services,* 876 F.2d 1051, 1054 (1st Cir.1989) (noting for the purposes of § 1442(a)(1) [8] that the State's "Com-

---

8. § 1442(a)(1) provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the

missioner, in administering the AFDC rules and regulations, might be considered a 'person acting under' the [U.S.] Secretary [of Health and Human Services], who is an 'officer of the United States'"); *Kuehner v. Schweiker*, 717 F.2d 813, 826 (3d Cir.1983) (Becker, J., concurring) (asserting that state defendants were "essentially the alter egos of their S[ocial] S[ecurity] A[dministration] counterparts and effectively are officers, employees, or agents of an agency of United States" for the purposes of mandamus jurisdiction under 28 U.S.C. § 1361[9]), *vacated and remanded on other grounds*, 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Ellis v. Blum*, 643 F.2d 68, 76 n. 9 (2d Cir.1981) (finding jurisdiction under § 1361). The defendants attempt to prove too much with these comparisons. Their argument seeks to extrapolate from these inapposite cases a broader notion of "agency" than any case decided under § 1345 has approved. That extrapolation is neither necessary nor prudent. On the contrary, any expansion of the idea that an individual State can be thought to act as an agent of the national government in a particular context must be discouraged in fidelity to the basic conception of federalism expressed in the Constitution. *See New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

On a more mundane level, it should be noted that these other statutes cited by the defendants operate on different premises and employ significantly different language from § 1345. For example, § 1442(a)(1) permits removal by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." That language encompasses a much broader range of actors than the words of § 1345, which

requires the party suing on behalf of the United States to have the "express authorization" of Congress. Moreover, § 1442 was designed to entitle *defendants* associated with the United States to escape local prejudice and have their case heard in federal court. *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969).

Equally unavailing is the defendants' comparison of this case to cases arising under the criminal false claims statute, 18 U.S.C. § 1001. Section 1001 prohibits making false statements "in any matter within the jurisdiction of any department or agency of the United States." That statute has been interpreted to permit prosecutions where the statements are made to state agencies so long as the fraud might involve federal money, *see, e.g., United States v. Notarantonio*, 758 F.2d 777, 787 (1st Cir.1985); *United States v. Goldstein*, 695 F.2d 1228, 1236 (10th Cir.1981), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). The Supreme Court, however, has specifically stated that, for purposes of the substantive prohibition expressed in § 1001, "the term 'jurisdiction' should not be given a narrow or technical meaning." *United States v. Rodgers*, 466 U.S. 475, 480, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984) (quoting *Bryson v. United States*, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969)). In contrast, that "narrow or technical meaning" is precisely the one at issue here. Accordingly, the defendants' claim to jurisdiction by analogy to a civil action brought under the False Claims Act must be rejected. *See United States ex rel. Fahner v. Alaska*, 591 F.Supp. 794, 798–99 (N.D.Ill.1984) (analyzing language of False Claims Act and listing relevant cases).

■ Finally, the Court notes one last impediment to its finding jurisdiction under § 1345. The federal removal statute provides that:

following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the

apprehension or punishment of criminals or the collection of the revenue.

9. Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b). Two of the defendants, New England Wholesale Tobacco Co., Inc. and Albert H. Notini & Sons, Inc. are said to be citizens of Massachusetts. Although these parties may not be central to Massachusetts' action, they are proper defendants. There does not appear to be any basis to conclude that they were added solely to defeat jurisdiction. With Massachusetts defendants legitimately in the case, removal is not appropriate under § 1345.

### ORDER

For the foregoing reasons, the Commonwealth's motion to remand the case to state court is GRANTED, and it is

SO ORDERED.